323 0331 the people of the state of Illinois appellee by Justin Nicolosi versus Martez L. Moore, appellant by Ann Brenner. Ms. Brenner, you may proceed. Thank you, your honors. May it please the court. My name is Ann Brenner. I'm with the Office of the State Appellate Defender here on behalf of the appellant, Mr. Martez Moore. Mr. Moore asserts that his counsel was ineffective in this case for failing to properly challenge the state's evidence that his blood alcohol content was 0.171 on the date of a fatal motor vehicle accident in which he was involved. This was the only evidence the state had to support the conviction for aggravated driving under the influence death of another. Furthermore, the motion would have been granted under Illinois state law had it been filed. Obviously, we're familiar with the fact, so let's just go to that. I presume you would agree that if Mr. Moore actually consented, there would be no basis for the motion and it wouldn't succeed. Would you agree with that basic principle? Not that it happened, but Absolutely, yes. If he had consented, it would be constitutional. So what facts in the record do you rely upon to conclude he did not consent? Well, the fact that the trooper warned him, gave him the warning to motorists, which is an Illinois state police form. It's one of two forms, both of which comply with the statute 625 ILCS 511 501. There are two sections of that statute which are commonly referred to as the implied consent statute and those are section 501.1 and 501.6. 501.1 concerns driving under the influence where a chemical test, a sample for chemical testing may be solicited by law enforcement only after they've established probable cause, which is evidenced by the issuance of a uniform traffic ticket, in that case for driving under the influence. So they've established probable cause of DUI. Under 501.6, on the other hand, the second of two implied consent statutes that involves a fatal or type A injury, which is a very serious injury, motor vehicle accident where the driver is found to have violated any non-equipment violation of the Illinois Vehicle Code. And again, just as in the first implied consent statute, probable cause must be established and that's evidenced by the issuance of that ticket, the uniform traffic ticket. In this case, the warning was given but a ticket was not issued and Mr. Moore had not been arrested at the time of the warning. You have a question? Well, this isn't a statutory summary suspension case, right? Correct. This is a question of whether there was a basis to suppress the blood result. What is it? Let me ask you this. How do we know which portion? It could be all. We have no shortage of cases where the officer, the trooper screws it up and doesn't read the whole thing. Do we have any idea what, assuming that it was the DUI warning to motorists that was read, because I think that was the testimony, assuming that that's the one that was read, we have no idea which part of it was read, how much of it was read. We're just guessing in some respects. That's correct, Justice Brennan. We don't know the specific details of what was read when that warning was read. What we have is Trooper Quick's testimony that he issued the warning. When asked to describe the warning, his testimony was that it is the warning that we give to individuals we believe to have been to be under the influence of alcohol or a drug at the time. He said he gave the warning, so it's implied that he gave the entire warning, but at the very outset of the warning, regardless, if he started to read the warning, the very first thing that he would have read was that you have been arrested for driving under the influence, and as a result of that arrest, which has to be based on probable cause, you have impliedly consented under Illinois state law to giving your blood or your urine for chemical testing. Then the warning follows up with a bit of a threat where if you consent to the testing and you're found and it comes back positive for either alcohol or drugs, you will automatically lose your license for a certain amount of time, but if you refuse the testing, having impliedly consented, you will lose your license for even a greater amount of time. I think it's a minimum of one to three years. One year if this is your first offense, three years if it's your second or third offense, and then going up from there. Those are the minimums. So our argument is that the consent was coerced because of that specific warning because he was threatened with, essentially threatened with, the loss of his license for a greater period of time because he had impliedly consented by virtue of driving on Illinois roads, breaking the law, in this case being involved in a fatal motor vehicle accident, but when the warning was given, Trooper Quick did not actually have probable cause, and that would have been evidenced if he did. It would be in the record a uniform traffic ticket. Does the warning to motorists actually use the language you have impliedly consented? No, I don't believe that's an interpretation. I mean, that's our understanding of why we have it in the first place, but that's not in the warning. Correct. It's not in the warnings to motorists. It's in the statute, however, or it's at least in the case law that discusses the statute. Right, but again, we're talking about consent. Right. So you're saying that the warning to motorists somehow vitiated the consent. What might, what otherwise would have been consent potentially? Correct. So what is it specifically that vitiates or makes any consent involuntary? Well, it's the coercive measure of the threat that you will lose your license for a greater amount of time if you do not agree to give your sample because you have implicitly agreed to give it by virtue of driving on our roads and committing an offense, whether it's DUI or any non-equipment violation and coupled with being involved in the fatal MVA. At the time of the request of Mr. Moore to provide the blood sample, was there probable cause to arrest him for DUI? There was not. There was not because when Schubert arrived on the scene of the two vehicle accidents, he first approached a white vehicle, which he identified the driver of as my client, Mr. Martez Moore, in court. Mr. Moore was unconscious. He was trapped in the driver's seat of the vehicle and he had paramedics surrounding him trying to extricate him from the vehicle. So there was no contact between Schubert Quick and Mr. Moore on the scene of the accident. Was there probable cause to issue a traffic ticket? There was not, no. And in fact, I was specifically asked about on cross-examination because the defense counsel did inquire as to why the other driver was ticketed and Mr. Moore was not. And so Schubert Quick was explicit that at the time that he issued the traffic ticket to the other driver for failing to yield to the stop sign, he had no knowledge of Mr. Moore's speed at the time of the crash. When was the independent witness that talked about Mr. Moore's car passing his car at a high rate of When was that discussion had with someone from law enforcement? Was it at the scene? It was at the scene, but it would have been with different deputies. Well, isn't there this collective knowledge doctrine, this idea that what's said to one officer is said to all officers for purposes of probable cause? There's a potential for that, but that is not explicit from the record. And very clearly, Mr. Schubert Quick said that he gave the warning because he believes Mr. Moore to be under the influence of alcoholic drugs, not because he believed him to have been speeding at the time of the crash. And speed alone does not mean that you are under the influence, or quite a few people on our roads would be picking up DUIs. And there's nothing in the record that would support the suggestion that Schubert Quick was aware of the hospital blood results at the time he read the warning to that is correct. Um, the individual, the nurse who did, um, the blood draw did not testify at trial. The parties agreed to stipulation that that she did the blood draw in compliance with state law. But there's no indication, though, that it was a medical that any party, um, from the treatment team reached out to law enforcement and said, you know, he's clearly that inebriated. And just I want to just make sure I'm correct in this. We all know sitting here that there presumably was a hospital blood because they have to do one given his injuries. And we probably do have a alcohol number in that CBC or whatever. But there's absolutely no evidence of whatever that was in the record. Correct? Correct. Correct. Um, and just back to the point of of the warning being coercive. Um, I just want to refer you to, uh, Illinois State, uh, Supreme Court, excuse me, case people because other says where law enforcement falsely informed a citizen that they have the lawful authority to search, and they, in fact, do not have that lawful authority. Um, that search is unconstitutional. Uh, again, that's because of the C. A. S. A. D. B. A. Um, in people versus Harris, the wrong notice was read, and there was a suggestion that that was not coercive. Why might we not find that line of cases compelling? Well, for for our purposes, the difference between the two notices, the two warnings, it's a distinction without a difference because both of at the very outset state that you have either been arrested for driving out of influence or, um, you are at fault for a fatal motor vehicle accident or motor vehicle accident involving a type A injury, as evidenced by the issuance of uniform traffic table. So regardless of which warning was given, the outcome for your analysis, as far as we are concerned, is the same. Uh, the state does point to Patel, uh, which which had a similar holding to Harris. But in that case, the facts were quite a bit distinguishable from, um, from our present case. The trooper in in Patel did, uh, established probable cause in that it was overheard. First of all, the driver rear ended someone who stopped at the stop sign. So it was clearly a red light. So it's clearly the driver's fault. He the officer overheard the driver saying to the paramedic on the scene that he had had something to drink as well as some kind of drug. Um, prior to driving that night, then the officer went to his, um, hospital bed as the trooper quick here. But instead of just straight up giving him the warning, he, uh, he initiated field sobriety tests, which defendant Patel failed. And then, um, then he gave him a breathalyzer, all of which are fine, all of which are legal without, you know, that's the process of establishing probable cause. Those are all fine. But it's the line that trooper quick crossed, which is giving that warning, uh, that we are arguing is a coercive measure because it threatens the individual warned with the loss of the driver's license for a greater period of time. Um, they refused because they have under our law impliedly consented by virtue of breaking the law. Um, and that was not done in this case. But there is while the record and I do understand your point, Justice Brennan, that the record is minimal and it's and it's tough on for reviewing court when you're reviewing whether council was ineffective for not filing motion to suppress because the state didn't have an opportunity to respond to that in court below. But here the critical piece of evidence that would have been introduced is that uniform traffic ticket. And we can say quite clearly there was no traffic ticket written. So if one was written at some point, right, not not to Mr Moore, not by trooper quick. No, the actual investigation into the entire accident was done by two individuals. Ultimately, did Mr Moore not receive some kind of a traffic ticket related to this case that was then dismissed? No, not that. Not that appears in the record. No, he received. I mean, he did receive two counts of aggravated. I'm not referring to the D. Y. Yeah, no, there is no traffic ticket in the record. Was there a traffic ticket to your knowledge ever issued? Not to my knowledge. No, no. So just going back to the statute at issue again, 6 25 5 11 501. We know that the traffic ticket is critical because our courts have singled out the traffic ticket as the component of the statute, which makes 5 1.6 in 1992 case King B. Ryan. Um, the Illinois or Illinois Supreme Court held the that the prior version of 501.6 was unconstitutional because at that time any driver involved in a fatal motor vehicle accident. I see my time is up, um, impliedly consented and and the legislature responded to that finding that that that section of statute was unconstitutional by by amending the statute so that a uniform traffic ticket is required. Justice Peterson. I have no question. Mr Brenner, you'll have an opportunity in a rebuttal. Thank you. Thank you, Mr Nicolosi. Good morning, Your Honor. If he's a court counsel, my name is Justin Nicolosi. I represent the state in this matter. Um, as your honors discussed with his Brenner, um, the state would submit that this is not an implied consent case. This is an actual consent case. Um, and I would go even further. This is an actual consent case with an inadequate record. Um, Justice Brennan, if you would ask me a lot of the questions that you would ask Miss Brenner, I would have pointed to the stark inaccuracies, the inadequacies of this particular record, um, with which to be able to answer a lot of these questions. Um, this issue was not litigated below. Of course, counsel did not file the motion that the defendant is now, um, wishing that counsel would have, um, would have filed. Therefore, none of these issues were really flushed out below. We don't know, um, really many details about the conversation that trooper quick had with the defendant in the hospital. We don't know, of course, that the specifics of the warning, um, all we have, of course, is trooper quick's testimony that the defendant agreed to provide a blood sample. That's all we have. Um, the state would submit based on this record, we're gonna we would argue that that's sufficient to establish actual consent consent to to, um, as a exception from the warrant requirement. You know, aside from probable cause, all we have is an officer asking a defendant a question. Defendant saying, yeah, and the blood sample having been taken. How does the warning to motorist language and imply in in coercive effect of the warning to motorist come into play with regards to painting the consent? You are, as I did in my brief, Justice Brennan discussed Harris. In my brief, I discussed to tell, uh, to tell a warning was given to the wrong warning was given there. But again, as to tell discussed as Miss Brenner discussed, the warnings are very, very similar. The court Patel found that the defendant who had agreed to a law enforcement request to provide a sample that was consensual. Despite the giving of request, that wasn't a specific topic. The court and Patel focused on, but based on the record and the facts in the record of the decision, the state. But as Miss cause. In this case, do you agree with this Brenner that at the time quick gave the I had the discussion about consent that there was no probable cause either for D. Y. Or for uniform traffic ticket. Your honor. Certainly based on this record, I would agree with that. But again, that distinguished Patel, um, in a way. But again, the Patel did come around saying they rejected defendants arguments about implied consent. They found that it was an actual consent case and that the defendant's consent was consensual for lack of a better word. And again, the court Patel knew that the warning was also given there. I'm gonna keep probably tethered my whole argument back to my first point that this record was inadequate. We don't have enough of a proper discussion because this was not litigated below, so we don't exactly know what happened. And I would point as I did in my brief. The one thing I can point to that there is some evidence that there was probable causes that trooper quick testified that he only gives the warning when he has reason to believe that somebody is under the influence of drugs or alcohol, and he did give the warning. So we don't know what other facts he had in his knowledge when he walked into that hospital room to give the warning and to talk to the defendant. But again, I point to the fact we just don't have enough on this record. We're really kind of grasping at straws here, kind of guessing, suggesting what might have happened, what trooper knew when he knew it, all this kind of stuff. And the state would submit that collateral proceedings would be kind of a far better forum for this particular discussion. When I look at the record, I'm not seeing the typical statutory summary suspension forum filed with the clerk, suggesting that law enforcement thought it should go forward with the statutory summary suspension, which might implicitly address this question of whether trooper quick actually thought he had probable cause. It's not that there was no statutory summary suspension in this case, correct? I believe you're right. I don't know for sure, but and there could have been there was probable cause. Memories were properly read. Yes. Again, yes, you're right. And again, we're pointing to things we don't know. Things we don't know. I wish we knew more. But, um, so transitioning slightly, um, to kind of the second part of my brief that let's just say, let's assume for the sake of argument that counsel was deficient for not filing this particular motion was defendant prejudice. The state would argue the defendant was not prejudiced by the lack of emotion. And because of for that reason, I point to count two. In this case, defendant was actually convicted of three counts. First two were aggravated. Do I? Third one was reckless homicide. But in my brief, I point to count two, which was aggravated D U I four driving under the influence. Count one was, of course, blowing over 0.8. And that was the basis for the D U I finding there. But account to there is going over 0.8 is not a prerequisite to finding guilt on count to as charged in 11 dash 501. But in fact, finder might certainly consider two times the legal limit in trying to figure out. Boy, I wonder if he was under the end. Sure, I understand your honor. But the defendant on this appeal did not argue that the evidence in count to has been sufficient. As I argued in my brief, there was sufficient evidence to to support a rational try or facts finding off driving under the influence based on his admission that he had three tall beers at about nine a.m. Um, I believe trooper quick was dispatched to the scene at about 10 50 a.m. So not not a whole lot of time elapsed there. There was, of course, testimony about the, um, the modules and the vehicles and defendant was going at a very, very high rate of speed about 96 miles an hour. Five seconds before the crash was slow was the prosecutor article. Oh, slow to break. According to Brian Flannery, who was the only eyewitness, the right lane was open. Defendant did not choose to swerve. The module also told, um, the investigator that the defendant did not swerve. There are things. So there are things in this record with which a jury could find, um, that he was under the influence, regardless of whether that 0.08 or above number was was provided. So the state submits that on a multiple levels that this court should affirm this decision below and rejected defendants claims for any other questions. I'd be happy to answer them. Thank you, Mr. His brother. Mhm. Thank you very much. Um, could I just short circuit you a little bit to turn a case name into a verb? Why aren't you here? Why? How do we possibly have enough information to address the issues that you have fairly raised? So a couple of things. Um, initially, it's the state's burden to prove that that consent was voluntary. Um, the case there's people be Anthony. It's an Illinois Supreme Court case in 2000. Well, that certainly is true in a motion to suppress. But this is motion to suppress inside a ineffective assistance envelope. Sure. So it's a little bit more confusing in that sure. Well, we argue that it can be inferred from the record that trooper quick did not have probable cause because if he did, he would have simply issued the uniformed traffic ticket. It's clear from the warning that he was reading to himself as much as he was reading it to Mr Moore that that uniformed traffic ticket was required just to give the warning, which is essentially, for lack of a better term, a threat, um, to the recipient of the warning. Um, under one other thing, as far as collateral review, I would mention is that Mr Moore received a four year sentence because it's aggravated. Do you lie? It's at 85%. He is scheduled to be paroled in December of 2026. So, um, we would also argue that in the interest of justice, this be considered here on direct appeal rather than, um, than recycling the case and then brought back via a post conviction petition. Uh, pointing really quickly to people be you banks. It's a Illinois Supreme Court case that was decided in the wake of the U. S. Supreme Court case in the McNeely, which dealt with exigent circumstances, um, for chemical testing. And in that case, they noted critically that chemical testing may not be conducted incident to a DUI arrest the same way that a breath test can be. Um, instead, it requires either a warrant, which, of course, we don't have here exited in circumstances which we don't have here because the new bank, the window of three hours was, um, was too long for law enforcement to have been concerned about the dissipation of alcohol in the blood. So certainly here, four hours as, uh, counsel alluded to, um, between the accident and the blood draw is doesn't amount to exigent circumstances. So, of course, we're left with consent, which I know is what we've attempted to drill down to, um, right at the outset. And thank you for that, Justice Brennan. Um, I would just reiterate that I'm just saying that the reasonable probability probability exists that the trial outcome would have been different had the evidence been suppressed. And we are, um, confident that that is true, because without the B. A. T. Uh, he could not have been convicted of account that he's convicted of, which is explicitly about point away or higher. Um, and then just quickly responding to a couple of things that, uh, that, uh, counsel argued or mentioned. Um, we do have from the record that Mr Moore was drinking at nine a.m. We don't know whether he finished the three tall bears at nine a.m. or whether he was saying he had started his beers at nine a.m. Um, so we're not entirely clear of the actual time frame between the time he started, uh, the time that the accident occurred. Um, again, I repeat that speed itself is not indicative of a D. U. I. Um, and with respect to the argument that he did not swerve, um, before impact, we know from the crash reconstruction expert that, uh, impact that Fred Becker steps on the gas 100% exactly one second prior to impact. Mr Moore was already breaking within half a second. That's much quicker than the average driver. It takes a second and a half. Um, and, of course, there was no opportunity to In fact, I think the reconstruction expert testified that there wouldn't have been any way to swerve. He hit the van right in the center of the of the passenger side. So the argument that he that his failure to swerve is indicative of his intoxication. I would argue failed here. Um, and just in closing, I want to restate that we respectfully ask this court to find that Mr Moore, uh, his trial counsel John Ridge was ineffective for failing to move to suppress the blood alcohol content evidence prior to trial and at the search of Mr Moore's blood sample for evidence of alcohol consumption violated his constitutional rights under both the Fourth Amendment and Article one, Section six of the Illinois Constitution. Thank you so much. The court thanks both sides for spirited arguments. We will take the matter under advisement and issue a decision in due course.